IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
NO. 5:17-cv-98

THOMAS M. CARUTHERS, JR.,

    **Plaintiff,**

v.

VITEX, INC.,

    **Defendant.**

ORDER

**THIS MATTER** is before the Court on the Motion to Dismiss Counterclaims (Doc. No. 6) filed by Plaintiff Thomas Caruthers ("Caruthers"). Defendant Vitex, Inc. ("Vitex") has responded, and Plaintiff has filed a reply. This matter is now ripe for adjudication.

For the following reasons, Plaintiff's Motion is granted in part, denied in part.

## I. BACKGROUND

On or about January 21, 2014, Caruthers entered into a contract (the "Master Agreement") with Vitex to provide consulting services as an independent contractor. Vitex is in the business of providing consulting services to banks for the evaluation and negotiation of contracts for financial technology services.

As an independent contractor, Caruthers was responsible for generating and pursuing leads, preparing proposals, and finalizing the sale of Vitex services to client banks. For each aspect of the sale Caruthers completed (lead, proposal, and close), he was entitled to receive a five percent (5%) commission of the gross revenue received by Vitext from the client. Thus, he could earn up to fifteen percent (15%) of the revenue from any deal if he completed all three

1

aspects of the sale.  Once a sale was finalized, Vitex assigned an employee or a contractor to provide the technology consulting services for the client bank.  A consultant performing this work typically received a forty percent (40%) commission of the gross revenue received by Vitex for that sale.

On June 13, 2017, Caruthers filed a Complaint against Vitex, alleging that Vitex failed to provide him the full commission he was owed on two deals: a sale of services to two Maine-based banks (the "Maine Deal"), and both a sale and provision of services to an Alabama-based bank (the "Alabama Deal").  Caruthers alleges that Vitex unilaterally terminated the Master Agreement on June 22, 2016, and that Vitex failed to remit the full payment that Caruthers was owed for the work he previously completed.  Accordingly, his Complaint seeks an award of compensatory damages, among other relief, under two alternative theories: (1) breach of contract, or (2) unjust enrichment.

On August 18, 2017, Vitex filed an Answer and Counterclaim against Caruthers.  Vitex alleges that while Caruthers was working as an independent contractor with Vitex, he became an officer of a competing financial technology services corporation, Insite Consulting Services Group, LLC ("Insite").  Vitex further alleges that Caruthers attended a banking conference and a Fiserv conference at Vitex's expense, but failed to provide any lead cards or client information generated from the conferences.  Rather, Vitex claims that Caruthers retained the generated leads for the benefit of Insite.  Further, Caruthers allegedly forwarded Vitex's confidential proposal templates to his personal email address and deleted all of his emails on Vitex's servers.  Vitex alleges that Caruthers then requested to terminate the Master Agreement on June 6, 2016, but refused to provide his working papers related to the Alabama Deal to Vitex management.  After

failed negotiations, Vitex "confirmed" his request to terminate the Agreement on June 22, 2016. Thereafter, Caruthers failed to return Vitex property, including a company phone and computer.

Accordingly, Vitex argues that Caruthers resigned his position and therefore forfeited any outstanding commission pursuant to the terms of the Master Agreement. Vitex also argues that it is entitled to damages stemming from Caruthers' actions under two counterclaims: (1) breach of contract, and (2) a violation of the Unfair and Deceptive Trade Practices Act. Caruthers has moved to dismiss these two counterclaims.

## II. STANDARD OF REVIEW

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the complaint or counterclaim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

### A. Breach of Contract

Vitex first alleges that Caruthers breached the terms of the Master Agreement. Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C.

Ct. App. 2000). Because it is incorporated into the pleadings and there is no dispute as to the authenticity of the document, the Court may consider the Master Agreement in its analysis. *See Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Here, there is no dispute that the Master Agreement is a valid contract. Caruthers does argue, however, that Vitex has failed to allege sufficient conduct to rise to the level of stating a plausible breach of the Master Agreement. Vitex alleges that Caruthers breached the Master Agreement by competing against Vitex, "both during and after his relationship with Vitex;" by diverting Vitex opportuntities to "Insite, himself, or others;" by using Vitex confidential information "for the benefit of Insite, himself, or others;" and by refusing to return Vitex company property. (Answer & Countercl., 5).

The Court does not need to address all of the issues of contract interpretation raised by the parties at this time because the Court finds that Vitex has clearly alleged sufficient factual support for the final allegation listed in its breach of contract claim: that Caruthers refused to return Vitex company property. The Master Agreement states,

> "Upon termination of this agreement, by lapse of time or otherwise, Contractor will surrender to the Company and its clients all Company or client property and documents in his or her possession, specifically including but not limited to all documents marked confidential and all files, records, documents, client lists, equipment and similar items relating to the business of the Company and its clients."

(Compl., Ex. A, ¶ 8(c)). Vitex alleges that Caruthers deleted "all of his emails on Vitex's servers" and turned over "only about 100 of the deleted emails" after Vitex's repeated requests. Vitex further alleges that Caruthers "refused to provide his working papers related to the Alabama Deal or the financial model necessary to determine what amount should be invoiced." And finally, Vitex alleges that Caruthers refused to return "his company phone and computer" after the termination of the Master Agreement.

4

In his memorandum, Caruthers argues that as an independent contractor, he retained complete control over his own work and record-keeping practices under the terms of the Master Agreement. Caruthers further argues that the Master Agreement required him to provide his own computer and phone, and thus Vitex cannot claim entitlement to property that it refused to provide. While the Master Agreement does grant Caruthers the right to control his own record-keeping (*Id.*, ¶ 1), it clearly requires that "all files, records, documents, client lists, equipment and similar items relating to the business of the Company and its clients" be returned upon termination (*Id.*, ¶ 8(c)). Further, the Master Agreement only states that Caruthers had to provide his own equipment "as required" (*Id.*, ¶ 6), but again, required him to surrender all Vitex-owned equipment upon termination. Vitex clearly alleges that Caruthers has failed to turn over all relevant documents and all Vitex-owned equipment. Thus, assuming the truthfulness of Vitex's claims to a property interest in these items, Vitex has sufficiently stated a claim for breach of contract under the Master Agreement.

Caruthers' Motion to Dismiss must accordingly be denied with respect to this claim.

**B.  Unfair and Deceptive Trade Practices Act**

Vitex next alleges that Caruthers violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75–1.1, *et. seq*. "To state a claim under the UDTPA, [a] plaintiff must show (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiff or to his business." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009).

Caruthers argues that Vitex has not alleged sufficient facts to show that he committed an unfair or deceptive act or practice. "The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75–1.1 is a question of law for the court." *Gray v.*

*N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000).  A trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and it is deceptive if it "has the capacity or tendency to deceive."  *Branch Banking & Trust Co. v. Thompson*, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992) (internal citations omitted).

"North Carolina courts have repeatedly held that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [UDPTA].'" *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (quoting *Branch Banking*, 418 S.E.2d at 700).  Rather, a plaintiff must show additional "substantial aggravating circumstances attending the breach to recover under the Act."  *Branch Banking*, 418 S.E.2d at 700 (adopting the Fourth Circuit's interpretation in *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530 (4th Cir. 1989)).  "The type of conduct that has been found sufficient to constitute a substantial aggravating factor has generally involved forged documents, lies, and fraudulent inducements."  *Stack v. Abbott Labs., Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013).  On the other hand, UDPTA claims stemming solely from alleged violations of contractual obligations are "out of place."  *Broussard*, 155 F.3d at 347.

Here, Vitex alleges in its Counterclaim that Caruthers' conduct was deceptive because he "misrepresented leads," "retained other leads for the benefit of himself, Insite, or others," "deleted emails to conceal his conduct," "concealed his relationship with Insite from Vitex," and "concealed his communications with client prospects from Vitex." (Answer & Countercl., 6). None of these allegations amount to an unfair or deceptive trade practice because they all arise out of the same facts as Vitex's breach of contract claim and they all relate to obligations arising out of the Master Agreement.  Thus, Vitex has failed to allege any additional "substantial aggravating circumstances" that would allow it to recover under the UDPTA.

Caruthers' Motion to Dismiss must accordingly be granted with respect to this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court orders that Plaintiff's Motion to Dismiss Defendant's Counterclaims (Doc. No. 6) is **GRANTED IN PART, DENIED IN PART**. Defendant's claim under the North Carolina Unfair and Deceptive Trade Practices Act is hereby dismissed with prejudice.

**SO ORDERED**.

Signed: June 1, 2018

Graham C. Mullen
United States District Judge