# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:17-CV-00098-KDB-DSC

| | |
|---|---|
| **THOMAS M. CARUTHERS JR.,** | ) |
| **Plaintiff,** | ) |
| v. | ) **ORDER** |
| **VITEX, INC.,** | ) |
| **Defendant.** | ) |

**THIS MATTER** is before the Court on the parties' cross motions for summary judgment. The Court has carefully reviewed the motion and considered the parties' arguments, briefs and exhibits. For the reasons discussed below, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's motion (Doc. No. 17), and **GRANT IN PART** and **DENY IN PART** Defendant's motion (Doc. No. 15).

## I. RELEVANT BACKGROUND

This case arises out of a dispute regarding payment of commissions under the terms of an agreement for independent contracting services between Plaintiff Thomas M. Caruthers ("Plaintiff") and Vitex, Inc. ("Vitex"). The undisputed facts are as follows:

Vitex provides technology consulting services to financial institutions. Its material services are provided by "salesmen" and "consultants." Salesmen meet with prospective clients to sell Vitex's consulting services, while consultants perform the actual services once a sale is made. Vitex's workforce is comprised mainly of independent contractors who are compensated by payment of commissions based on sales.

1

Plaintiff began working as a "salesman" for Vitex in January 2014. The terms of his employment were governed by a "Contract Consulting Services Master Agreement" ("Master Agreement") and a single addendum thereto. The Master Agreement provides that Plaintiff was to be paid up to 15% of the gross revenue received by Vitex for each sale. 5% would be paid for generation of the client lead, 5% would be paid for drafting the proposal, and 5% would be paid for closing the sale. The Master Agreement provides that commissions would not become due to be paid until Vitex received payments from the client for the services. If the client never paid, the Plaintiff would not receive any payment.

At some point in 2015, Plaintiff closed a sale to CCB Community Bank ("CCB"), where he personally banks. (Doc. No. 19, at 5.) Because of Plaintiff's relationship with CCB, Vitex's President, David Powell, authorized Plaintiff to also act as a consultant and provide Vitex services to CCB after the sale closed. (*Id.*) The Master Agreement and addendum only covered the terms of compensation for sales, not consulting. (*Id.*) As a result, Powell "verbally agreed that Vitex would pay [Plaintiff] 40% of gross revenue" for the consulting services provided to CCB, "in addition to the 15% he would receive for completing the sale" to CCB. (*Id.*) The parties did not memorialize this agreement in writing or create an addendum to the Master Agreement.

The principal issue in this action is whether or not Plaintiff is entitled to certain commission payments that did not become due to be paid to him until after the parties terminated their relationship. The Master Agreement provides the following:

> 5. Forfeiture of Commissions: If Contractor or Company Terminates the Contract Consulting Services Master Agreement or applicable addendums for any reason, fixed fee payments end immediately and the following policy applies for future commission payments:

> *Contractor Initiated Termination*: All future commissions from active engagement will be forfeited effective with the notification date of separation.
>
> *Company Initiated Termination*: All commissions earned on active engagements (including "signed" but not yet active) will be paid for a period of six (6) months from the date of termination.

(Doc. No. 19–1, at ¶ 5.) Plaintiff contends that Vitex terminated the agreement, while Vitex contends that Plaintiff initiated termination of the agreement.

In May 2016, Powell stepped down as president and Randall Roth took control of Vitex. Plaintiff contends that Roth cut off Plaintiff's access to his Vitex email account on June 1, 2016. (Doc. No. 19, at 6.) Vitex asserts that it did so because Plaintiff allegedly deleted 5,500 emails from his Vitex account. Roth then sent an email to Plaintiff stating that his performance as a Vitex contractor "over the past several months" had been "completely unacceptable." (Doc. No. 19–7.) The email informed Plaintiff he was to have no further contact with any Vitex clients and that "after we complete our review of the content of the deleted emails we will determine the appropriate actions to take and your status as a Vitex contractor." *Id.* Plaintiff testified that "based on the tone and tenor" of Roth's email, he was under the belief that Vitex no longer wanted him to continue working as a contractor. (Doc. No. 19, at 6.)

The parties agree that five days after Roth sent this email, Plaintiff had a telephone conference with Roth and Powell to discuss Plaintiff's employment status. This phone call is the center of the parties' dispute. Roth and Powell testified that during this call, Plaintiff "requested that we find a way to end his relationship with Vitex." (Doc. No. 20, at 3.) Plaintiff testified that he does not recall saying this. *Id.* Vitex contends that prior to this alleged statement by Plaintiff, "Vitex had never mentioned termination" of Plaintiff, but that it had only "been frustrated with [his] performance." *Id.*

3

Following this phone call, neither party disputes that they began negotiating the terms of Plaintiff's separation from Vitex. Roth sent Plaintiff at least two versions of a separation agreement in which Vitex agreed to pay certain commissions to Plaintiff. (Doc. Nos. 19–9, 19–12.) Two days after Plaintiff disputed the commission amounts provided for in the proposed agreement Roth sent to him on June 20, 2016, Roth sent Plaintiff a letter terminating the Master Agreement effective June 20, 2016. (Doc. No. 19–13.) The cover email attaching the letter stated that "[a]attached is confirmation of your June 6th request to terminate your relationship with Vitex." *Id.* The following day, Roth sent an email to all Vitex employees stating that "[w]e have terminated our relationship with [Plaintiff] effective today." (Doc. No. 19–14.)

On June 13, 2017, Plaintiff filed the instant action for breach of contract, or unjust enrichment in the alternative. (Doc. No. 1.) He seeks payment of the 15% commissions he claims he is owed for sales to four clients, as well as the 40% consulting commission he earned for work for CCB. He also seeks payment of two additional 5% commissions for sales to two customers for which he previously received only 10% payments. On August 18, 2017 Vitex counterclaimed for breach of contract, as well as unfair and deceptive trade practices. (Doc. No. 5.) The Court dismissed the claim for unfair and deceptive trade practices on Plaintiff's 12(b)(6) motion. (Doc. No. 9.)

On January 7, 2019, Vitex filed a motion for summary judgment in its favor "as to all claims asserted by the Plaintiff." (Doc. No. 15.) On the same day, Plaintiff filed a motion for partial summary judgment in his favor on his claim for breach of contract and on Vitex's counterclaims. (Doc. No. 17.)

## II. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing'. . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir.

2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249–50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

### III. DISCUSSION

#### A. Plaintiff's Breach of Contract Claim Under the Master Agreement.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000). "Additionally, when an agreement is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the trier of fact." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 180 N.C. App. 257, 266 (2006), *aff'd*, 362 N.C. 269 (2008) (*citing Silver v. N.C. Bd. of Transp.*, 47 N.C. App. 261, 270 (1980)). "Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court . . . must

construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms." *McKinnon v. CV Indus., Inc.,* 213 N.C. App. 328, 334 (2011) (quoting *Hodgin v. Brighton,* 196 N.C. App. 126, 128 (2009)).

        1.   <u>There is no reasonable dispute as to the meaning of the Master Agreement.</u>

As an initial matter, the parties disagree about the meaning of the forfeiture clause in their summary judgment briefing. Plaintiff argues that Paragraph 5 must be read to mean that he only forfeits his commissions if he *terminated* the Master Agreement. In contrast, Vitex argues that the terms of Paragraph 5 provide that forfeiture turns on who *initiates* termination of the Master Agreement, not which party actually terminates the parties' relationship.

Reading the contract as a whole, the Court finds that there is no genuine dispute about the meaning of the Master Agreement that precludes summary judgment. Paragraph 10 provides that Vitex may terminate the Master Agreement for cause with five days written notice, and that either party may terminate the Master Agreement without cause with 30 days written notice. (Doc. No. 19–1, at 5.) The Court finds that the provisions regarding written notice unambiguously establish the meaning of "initiating" termination, and that Paragraph 5, regarding payment of commissions, must be read to incorporate the initiation procedures outlined in Paragraph 10. Accordingly, whether or not Plaintiff is entitled to payment of the commissions turns on which party initiated the termination.

        2.   <u>The record before the Court establishes that Vitex initiated Plaintiff's termination.</u>

In support of its Motion for Summary Judgment, Vitex argues that it is entitled to summary judgment because Plaintiff initiated the termination of the Master Agreement during the June 6, 2016 phone call with Roth and Powell. (Doc. No. 16, at 11.) Specifically, Vitex cites to the testimony of both Roth and Powell that Plaintiff requested they "find a way to end his

7

relationship with Vitex." (*Id.*, at 6.) In response to Vitex's Motion for Summary Judgment, Plaintiff argues that Vitex took "substantial steps toward 'initiating' his termination" prior to the June 6, 2016 phone call by shutting down Plaintiff's email access, restricting him from contacting any client, and informing him that it would be making a determination as to his status as a Vitex contractor. (Doc. No. 21, at 16.) Plaintiff also argues that his "expression of a desire to 'find a way' to end an employment relationship is not akin to an effective resignation." (Doc. No. 19, at 11.)

The Court first finds that the record lacks any evidence establishing that Plaintiff initiated termination of the Master Agreement. The Court agrees with Plaintiff that expressing a desire to "find a way" to end an employment relationship cannot be fairly characterized as an "initiation of termination," but rather an invitation to negotiate. For this reason, the forfeiture clause in Paragraph 5 of the Master Agreement does not apply and Vitex's motion for summary judgment on this issue is denied.

The Court further finds that Vitex initiated termination of the Master Agreement. Undisputed evidence establishes that Vitex shut down Plaintiff's email access, told him to cease working with clients, and informed him that it would be reviewing his status as a Vitex contractor. Plaintiff was informed of these actions in writing, and the parties' relationship was terminated by Vitex less than a month later. Based on this evidence, no reasonable factfinder could conclude anything other than that Vitex initiated termination of the Master Agreement. Accordingly, Plaintiff's motion for summary judgment as to whether he is entitled to commission payments "for a period of six (6) months from the date of termination" is granted.[1]

---

[1] Because the Court grants summary judgment in favor of Plaintiff on the issue of whether he is entitled to payment of commissions post-termination, Plaintiff's argument that he is entitled to a

### B. Plaintiff's Breach of Contract Claim Based on Alleged Oral Modification of the Master Agreement.

Vitex separately argues that it is entitled to summary judgment to the extent Plaintiff asserts he is entitled to payment of an additional 5% commission for two sales engagements based on the alleged oral modification of the Master Agreement's compensation terms in December 2015. (Doc. No. 16, at 10.) In support of its position, Vitex cites to the plain language of the Master Agreement stating that Plaintiff was to be paid in 5% increments, up to 15%, based on the specific tasks performed for each client. *Id.* Vitex contends, and Plaintiff admits, that by these terms Plaintiff only performed services equating to a 10% commission for the clients in question. *Id.* Vitex also points out that the Complaint does not articulate Plaintiff's position regarding the flat 15% commission. Finally, Vitex points to Powell's declaration that he discussed changing Vitex's compensation structure to a flat 15% for sales with several consultants, but that the "proposal was never adopted." *Id.* At oral argument, Vitex noted that the Master Agreement contains a merger clause providing that no amendment may be made other than by a signed writing.

"North Carolina recognizes the validity of merger clauses and has consistently upheld them." *Zinn v. Walker*, 87 N.C. App. 325, 333 (1987). Such clauses "create a rebuttable presumption that the writing represents the final agreement between the parties." *Id.* Here, Plaintiff has not alleged any "fraud, bad faith, unconscionability, negligent omission or mistake in fact" that could operate to rebut the presumption that the Master Agreement, as written, controls the parties' relationship. *Id.* Nor has Plaintiff successfully argued that "giving effect to the merger clause would frustrate and distort the parties' true intentions and understanding

---

40% commission for consulting services irrespective of the forfeiture term contained in the Master Agreement is moot. Accordingly, the Court declines to address it in this opinion.

regarding the contract," as he has not provided sufficient evidence to create a triable issue of fact as to the parties' intent. *Id.* For this reason, the Court grants summary judgement in favor of Vitex as to whether Plaintiff is entitled to an additional 5% commission payment for two of his sales.

### C. Vitex's Counterclaim for Breach of Contract

Finally, Plaintiff moves for summary judgment in his favor on Vitex's counterclaim for breach of contract. Vitex's counterclaim alleges that Plaintiff violated the Master Agreement by failing to surrender to Vitex "all Company or client property and documents in his or her possession" upon termination of the Master Agreement. (Doc. No. 19-1, at ¶ 8c.)

Vitex argues that there is a triable issue of fact as to whether Plaintiff has "improperly kept or destroyed property of Vitex." (Doc. No. 20, at 7.) Specifically, Vitex cites to testimony from a Vitex employee that Plaintiff retained documents he created at industry conferences called "lead cards" that list client contact information. (*Id.* at 7–8.) Vitex also argues that Plaintiff has also kept or destroyed Vitex emails. (*Id.*) Specifically, it claims Plaintiff forwarded one email to his personal account. (Doc. No. 20, at 8.)

In response, Plaintiff points out that the Master Agreement provides that Vitex has no control or supervision over his recordkeeping practices, and does not provide that he is required to retain any files. (Doc. No. 22, at 8, Doc. No. 19-1, at ¶ 1.) Further, Plaintiff denies that he retained any lead cards. (Doc. No. 19, at 19.)

The Court finds that the conflicting evidence as to whether Plaintiff retained "lead cards" precludes summary judgment on Vitex's counterclaim. However, the Court notes that during oral arguments, counsel for Vitex admitted it could not demonstrate that it has suffered any damages from Plaintiff's alleged retention of Vitex property. While lack of damages does not

require grant of summary judgment in Plaintiff's favor, the Court counsels Vitex to consider the expense of trial and conservation of judicial resources before moving forward with this claim.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Plaintiff's "Motion for Summary Judgment" (Doc. No. 17) is **GRANTED** to the extent it argues Plaintiff is entitled to payment of commissions post-termination as provided in Paragraph 5 of the Master Agreement, and **DENIED** to the extent it argues that Plaintiff is entitled to payment of an additional 5% commission for two sales engagements based on alleged oral modification of the Master Agreement. Plaintiff's motion is further **DENIED** to as to Defendant's counterclaim for breach of contract. Defendant's "Motion for Summary Judgment" (Doc. No. 15) is **DENIED** the extent it argues Plaintiff forfeited commission payments as provided in Paragraph 5 of the Master Agreement, and **GRANTED** to the extent it argues that Plaintiff is not entitled to payment of an additional 5% commission for two sales engagements based on alleged oral modification of the Master Agreement.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 8, 2019

Kenneth D. Bell
United States District Judge